UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTAE JAREE GORDON,

|  |  |
|---|---|
| Plaintiff, | Civil Action No. 22-11873 |
| v. | Matthew F. Leitman<br>United States District Judge |
| K. CARGOR, *et al.*, | David R. Grand<br>United States Magistrate Judge |
| Defendants. | |

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART
## AND DENY IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 31)

On August 12, 2022, plaintiff Deontae Gordon ("Gordon"), an incarcerated person, filed this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1).  At the time of the events at issue in his complaint, Gordon was confined at the Charles E. Egeler Reception and Guidance Center ("RGC") in Jackson, Michigan.  (*Id.*, PageID.9).

In his complaint, Gordon set forth claims against at least seventeen employees of the Michigan Department of Corrections ("MDOC") who were employed at RGC at the time of the events in question (collectively, "Defendants").  He pleads claims for violations of his First and Eighth Amendment rights, as well as a state law claim for negligence.  An Order of Reference was entered on January 3, 2023, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b).  (ECF No. 12).

Before the Court is Defendants' Motion to Dismiss, which was filed on April 4, 2023.  (ECF No. 31).  Gordon filed a response to this motion on April 19, 2023 (ECF No.

33), and Defendants filed a reply on April 28, 2023 (ECF No. 35).[1]

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 31)** be **GRANTED IN PART AND DENIED IN PART**.

## II.    REPORT

### A.    The Allegations in Gordon's Complaint

According to Gordon, on October 1, 2020, he was transferred from the Carson City Correctional Facility ("DRF") – an MDOC facility – "to the Kent County Jail for an evidentiary hearing in his criminal case."  (ECF No. 1, PageID.12).  On October 6, 2020, Gordon was returned to MDOC custody through RGC,[2] where he remained until January 7, 2021.[3]  (*Id.*).  In his complaint, Gordon alleges that various defendants violated his First

---

[1] Subsequently, Gordon filed an unauthorized "Surreply to: Defendants' Reply in Support of Motion to Dismiss."  (ECF No. 36).  Although such a filing is not permitted under the court rules and could be stricken, because Gordon is proceeding *pro se*, the Court has considered its contents in ruling on the merits of the instant motion.

[2] RGC is not a general population prison; rather, it is an intake, quarantine, and medical care facility where prisoners are confined temporarily prior to their placement in general population prisons. *See*   https://www.michigan.gov/corrections/prisons/charles-e-egeler-reception-and-guidance-center (last accessed September 14, 2023).

[3] In his complaint, Gordon indicates he remained at RGC until "1/7/20."  (ECF No. 1, PageID.12).  It appears that this is a typographical error, however, based on the "10/6/20" date provided at the beginning of the same sentence.

Amendment right to freely exercise his religious beliefs and his Eighth Amendment right to be free from cruel and unusual punishment, and that their actions were negligent under state law.  The factual allegations underlying these claims are discussed below.

### 1.    *First Amendment Allegations*

According to Gordon, he is a "registered Buddhist" and, per the tenets of his religion, he is prohibited from consuming food that is not vegan; thus, he has been authorized to eat from the MDOC's Religious Menu as a vegan for several years.  (*Id.*). Gordon asserts that "[o]nce an inmate is approved to eat from the Religious Menu, the MDOC is prohibited from housing an inmate at a facility that does not accommodate the Religious Menu."  (*Id.*) (citing MDOC Operating Procedure 05.03.150A, ¶ F ("A prisoner approved to eat vegan meals may be housed only at designated facilities.")).  He then alleges that RGC does not provide vegan meals.[4]  (*Id.*, PageID.13).

According to Gordon, when he arrived at RGC, he "immediately contacted Acting Warden (Defendant Cargor), Deputy Wardens (Defendants Jarret, Malloy, and Howard), the Resident Unit Manager (Defendant Pearl), [and] John/Jane Doe Transfer Coordinator ...."  (*Id.*).  Gordon claims he informed each of these individuals that he was a vegan and "needed to be immediately transferred back to DRF and/or accommodated thru [sic] the dietician."  (*Id.*).  According to Gordon, all of these individuals "not only had the authority to order [his] transfer but was [sic] obligated per MDOC policy to do such."  (*Id.*).  Gordon then alleges that the "actions or inaction" of Defendants Cargor, Jarret, Malloy, Howard,

---

[4] In their motion to dismiss, Defendants concede that RGC does not provide vegan meals, noting that there are a limited number of facilities that do so.  (ECF No. 31, PageID.270).

Pearl, and John/Jane Doe Transfer Coordinator – in failing to transfer him out of RGC –

denied him his First Amendment right to freely exercise his religious beliefs[.]"[5]   (*Id.*,

PageID.13, 23; ECF No. 36, PageID.353).

2.   *Eighth Amendment Allegations*

Gordon also alleges that the failure to transfer him to a facility providing vegan

meals, thus forcing him "to eat foods in violation of those central tenets" of his religion

also amounted to "a deprivation of a human need, in violation of the 8th amendment." (*Id.*,

PageID.15).  In addition to this alleged Eighth Amendment violation, Gordon then lists a

litany of complaints regarding his confinement at RGC, which he contends "in their

individuality & totality" also violate the Eighth Amendment.  (*Id.*).  Specifically:

- According to Gordon, RGC "does not allow inmates to order shower shoes, nor do they provide them." (*Id.*).  Gordon alleges that, as a result, he "was forced to either not shower at all or shower barefooted in a community shower shared by over 220 inmates, where those inmates blow snot, urinate, and ejaculate." (*Id.*).

- Gordon alleges he "was forced to go (3) weeks without soap, toothpaste & deodorant." (*Id.*).

- Gordon complains that "[l]aundry is only washed once per week"; "windows were busted out creating freezing temperatures"; "[h]ot water did not work" for one week; and he was forced to get by with "[o]nly (1) roll of tissue" per week.  (*Id.*, PageID.16, 17).

- Gordon also complains about the lack of recreation time, as "RGC only allows (3) yards **per week**" for a total of "2 hours & 15 minutes out of cell activity **per week**." (*Id.*) (emphasis in original).  Gordon further alleges that

---

[5] Gordon also claims that the actions of Defendants Cargor, Jarret, Malloy, Howard, Pearl and John/Jane Doe Transfer Coordinator "constituted negligence" because they had a "legal duty to transfer Plaintiff to a facility that accommodated the Vegan diet" but they "breached that duty when they held Plaintiff at RGC for four months, being fully aware that MDOC policy prohibited them from housing him there." (ECF No. 1, PageID.13).

this lack of yard time made it difficult to access a phone; "RGC does not allow inmates to receive reading materials from the general library"; and "no appliances are allowed, so Plaintiff was basically left with nothing to do but stare at the wall 24hours [sic] a day." (*Id.*, PageID.17, 18).

- Gordon complains that there is "no ventilation system in the cells" but "simply a hole in the wall" where the ventilation pipes were previously. (*Id.*, PageID.18).

- Gordon alleges that, for some unknown period of time, Defendant Gundrum "cut the water off in the unit" because inmates were "throwing things off the gallery[.]" (*Id.*). Gordon claims he asked Defendants Burke and Brussow to turn the water back on, but they refused. (*Id.*).

- Finally, Gordon alleges that, in violation of MDOC policy, "RGC was not preparing the vegetarian substitute" meal for some period of time. (*Id.*, PageID.19-22). On one occasion, on October 15, 2020, Gordon alleges that he asked Defendant Lewis for the vegetarian substitute, and she allegedly said, "Know [sic] one eats that s**t so I'm not going to have my guys make it." (*Id.*, PageID.19). When Gordon asked to speak with Defendant Mulligan, RGC's Food Service Director, Defendant Lewis allegedly told him, "Eat the beef or don't eat at all." (*Id.*). Gordon alleges several other instances on which the vegetarian substitute was not available, or where the substitute was available, but the same utensils were used to serve both the vegetarian and non-vegetarian option.[6] (*Id.*, PageID.19-21).

### B.    Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal

sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[6] Gordon also alleges that the actions of Defendants Mulligan, Lewis, Hall, Weaver, Lobliner, Hadley, and John/Jane Doe Food Stewards breached their "legal duty to provide [a] vegetarian substitute" on more than 20 occasions in violation of state law. (ECF No. 1, PageID.26-27).

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements.  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading[.]" *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

6

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless[,]" *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead facts sufficient to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C. Analysis

#### 1. *Gordon's First Amendment Free Exercise Claim*

Gordon contends that Defendants Cargor, Jarrett, Malloy, Howard, Pearl, and Transfer Coordinator John/Jane Doe (collectively, the "Free Exercise Defendants") violated his rights under the First Amendment to freely exercise his religion when they failed and/or refused to transfer him out of RGC, despite Gordon's requests and their knowledge that RGC did not offer the vegan diet Gordon's Buddhist religion requires. (ECF No. 1, PageID.13, 23).

While "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal quotations omitted). To establish that this right has been violated, Gordon must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things"; (2) his belief is sincerely held; and (3) Defendants' behavior infringes upon this practice or belief. *See Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987). The third

7

prong is important because it tracks § 1983's requirement that not only must a plaintiff establish a violation of a constitutional right, but he must also set forth specific facts regarding each named defendant and then show how each defendant personally participated in the alleged unconstitutional behavior.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

In this case, Gordon alleges that he is a Buddhist and has been eating from the MDOC's vegan menu for several years.  (ECF No. 1, PageID.12).  The defendants do not dispute these allegations, and they sufficiently establish the first two prongs of Gordon's free exercise claim – namely, that he has a "sincerely held" religious belief that he must consume only a vegan diet.  The next consideration is "whether the challenged practice of the prison officials infringes upon the religious belief."  *Kent*, 821 F.2d at 1225.  In his complaint, Gordon alleges that, because of a hearing in one of his criminal cases, he was transferred by writ to the Kent County Jail.  (ECF No. 1, PageID.12).  Upon his return to MDOC custody, Gordon was sent to RGC, where he remained for just over three months (from October 6, 2020, to January 7, 2021).  (*Id.*).  The defendants concede that, during this time, Gordon was not provided with vegan meals, as RGC does not serve them.  In essence, then, during his fairly lengthy, albeit temporary incarceration at RGC, Gordon was required to either abandon his religious diet practices or subsist on less than adequate nutrition.  Courts have recognized that requiring a prisoner "to make such a choice is precisely the type of pressure that substantially burdens the free exercise of [a prisoner's] religious practice."  *Carter v. Lutjens*, No. 21-cv-203, 2022 WL 1467951, at *7 (W.D. Mich. May 10, 2022).

However, in order to state a claim against any of the Free Exercise Defendants, Gordon must also show that he or she "played an active role in the alleged violation of his religious rights." *Id.* In his complaint, Gordon specifically alleges that the Free Exercise Defendants "not only had the authority to order [his] transfer, but [were] obligated per MDOC policy to do such."[7] (ECF No. 1, PageID.13). Similarly, Gordon alleges that he "informed [the Free Exercise Defendants] that [he] was a Vegan and that he needed to be immediately transferred" and their "actions or inaction" in failing or refusing to take action to have him transferred to a different facility "denied [him] his rights under the First Amendment of the United States Constitution to freely exercise his religious beliefs." (*Id.*). Thus, Gordon has alleged that each of the Free Exercise Defendants was aware that he adhered to a vegan diet as a result of his religious beliefs; that he asked them that he be transferred to a facility that provided vegan diets; and that despite having the authority to authorize such a transfer, they failed or refused to do so.

In their instant motion to dismiss, Defendants point out that, during the time frame at issue (October 6, 2020, through January 7, 2021), the COVID-19 virus was causing lockdowns and disruptions in nearly every segment of society. (ECF No. 31, PageID.282). Defendants further assert that, as a result of the COVID-19 pandemic, the Governor issued

---

[7] To the extent Gordon believes that the Free Exercise Defendants violated his constitutional rights by failing to adhere to the MDOC policy that required him to be transferred to a facility providing vegan meals, he is mistaken, as policy violations do not equate to constitutional violations. *See Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *see also Wilcox v. Lancour*, No. 20-cv-183, 2021 WL 230113, at *5 (W.D. Mich. Jan. 22, 2021) ("Section 1983 is addressed to remedying violations of federal law, not state law. Thus, alleged violations of prison policy … do not state a cognizable § 1983 claim.") (internal citations omitted).

executive orders[8] that affected the MDOC's ability to transfer prisoners, as well as the ability to receive prisoners back from jails or other outside writs. *See* https://www.michigan.gov/whitmer/news/state-orders-and-directives/2020/04/27/executive-order-2020-62 (last accessed September 14, 2023). In an effort to implement the temporary COVID-19 related protocols called for by the Governor, the MDOC filtered all prisoners entering MDOC custody through RGC for quarantine prior to being transferred to their home facilities. *See* https://www.michigan.gov/-/media/Project/Websites/corrections/publications/Folder2/dom_2020-30r5_final.pdf?rev=efd7c74a43f940d48b12a482691bdb74 (the "Director's Office Memorandum") (last accessed September 14, 2023). According to Defendants, "[a]ll prison transfers were suspended at the facility level and were instead controlled by the Deputy Director of the MDOC." (ECF No. 31, PageID.283) (citing Director's Office Memorandum at 5 ("No transfers shall be made unless approved by the [MDOC's Correctional Facilities Administration] Deputy Director.")). Thus, Defendants argue that none of the Free Exercise Defendants had any control over when Gordon would be transferred out of RGC and, as such, his First Amendment claim against them fails. (*Id.*, PageID.282-84). At least at the motion to dismiss stage, however, where the factual

---

[8] Contrary to Gordon's arguments in his response brief (ECF No. 33, PageID.310-11), courts may consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Hill v. Whitmer*, No. 20-13440, 2022 WL 18588075, at *4-5 (E.D. Mich. Oct. 26, 2022) (considering certain relevant statewide executive orders and MDOC Director's Office memoranda in ruling on motion to dismiss).

allegations plead in Gordon's complaint must be accepted as true, and all reasonable inferences construed in his favor, the Court must disagree.

At this stage of the proceedings, Gordon has sufficiently alleged the personal involvement of the Free Exercise Defendants in the decision not to transfer him out of RGC.  Specifically, Gordon has alleged that each of the Free Exercise Defendants knew he adhered to a vegan diet for religious reasons, had the authority to order his transfer, but failed or refused to do so.  (ECF No. 1, PageID.13).  While Defendants argue that, during the relevant time period, the Free Exercise Defendants did *not* have the authority to transfer Gordon, because transfers needed to be approved by the Deputy Director, that is a factual issue on which Gordon is entitled to conduct discovery.  Moreover, even if only the Deputy Director could give final approval for a transfer, questions remain as to what role, if any, the Free Exercise Defendants could (or should) have played in such a decision to transfer Gordon.  For example, could they have submitted a request to the Deputy Director on Gordon's behalf, seeking his transfer and explaining the religious reasons behind the request?  *Should* they have done so?  Were other inmates being transferred out of RGC during this time period?  If so, is there any evidence that the Free Exercise Defendants played a role in such transfers?  Ultimately, the Free Exercise Defendants may show that they were powerless to effectuate Gordon's transfer request, and that they either took all actions they could have taken to assist Gordon, or had no obligation to take any action with respect to his requests for such a transfer.  But at the motion to dismiss stage, where all reasonable inferences must be drawn in Gordon's favor, *see Waskul v. Washtenaw Cty. Cmty. Health*, 979 F.3d 426, 440 (6th Cir. 2020), sufficient factual questions remain to

allow Gordon to proceed with this claim against the Free Exercise Defendants.

For all of these reasons, Defendants' motion to dismiss Gordon's claim against the Free Exercise Defendants for violation of his First Amendment rights should be denied.

### 2.   *Gordon's Eighth Amendment Claims*

As set forth above, Gordon also alleges that the failure to transfer him to a facility providing vegan meals, thus forcing him "to eat foods in violation of those central tenets" of his religion also amounted to "a deprivation of a human need, in violation of the 8th amendment."  (ECF No. 1, PageID.15).  In addition to this alleged Eighth Amendment violation, Gordon makes various other complaints regarding his confinement at RGC, which he contends also violate the Eighth Amendment, either individually or in combination.  (*Id.*, PageID.15-22).

### a.   *Legal Standards*

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981) (internal quotations omitted).  The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

confinement." *Rhodes*, 452 U.S. at 348.  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety[.]" *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually

knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

> b.      *Deprivation of Vegan Meals and/or Vegetarian Substitutes*

"[I]t is clearly established that the prison must provide adequate nutrition to prisoners," and that a failure to do so is an Eighth Amendment violation. *See Welch v. Spaulding*, 627 F. App'x 479, 484 (6th Cir. 2015). As set forth above, Gordon alleges that the defendants' actions – in forcing him to eat foods in violation of his religious beliefs for a three-month period – constituted a "deprivation of a human need" in violation of the Eighth Amendment. (ECF No. 1, PageID.15). Gordon also alleges that his Eighth Amendment rights were violated because, for some period of time, "RGC was not preparing the vegetarian substitute" meal (or was providing the vegetarian substitute but using the same utensils to serve both the vegetarian and non-vegetarian options).[9]  (*Id.*, PageID.19-21).

It is clear, however, that Gordon is not alleging that he was denied nutritious meals; rather, he is only alleging that he was denied the meals he wanted to eat based on his religious beliefs. When the deprivation is caused by the inmate's choices regarding food

---

[9] Gordon alleges that, on one occasion, when he asked Defendant Lewis for the vegetarian substitute, she said, "Know [sic] one eats that s**t so I'm not going to have my guys make it." (ECF No. 1, PageID.19). When Gordon asked to speak with Defendant Mulligan, RGC's Food Service Director, Defendant Lewis allegedly told him, "Eat the beef or don't eat at all." (*Id.*). In support of these allegations, Gordon references Grievance No. RGC-2010-2907-17i, which was attached to his complaint. (*Id.*, PageID.19, 94). In this grievance, however, Gordon indicates that after he complained about this interaction to Food Steward McCumber, she "ordered an inmate to go make some soy and told [Gordon] to wait." (*Id.*, PageID.94). Thus, based on Gordon's own documents, it appears he was in fact provided with a vegetarian substitute on this occasion.

– even religious choices – the Eighth Amendment is simply not implicated.  *See Mobley v. Smith*, No. 05-cv-153, 2007 WL 1650934, at *6 (W.D. Mich. June 4, 2007) ("an allegation that a prisoner has elected not to consume the 'whole meals' provided by the prison – and solely because of his religious preference – does not state a claim for violation of the Eighth Amendment"); *Cousins v. Rogers*, No. 3:18-CV-26-GFVT-HAI, 2019 WL 5106780, at *14-15 (E.D. Ky. July 15, 2019) (plaintiff failed to state a claim for violation of the Eighth Amendment where he alleged that he was forced to eat only bread and vegetables because of his religious preference for a kosher diet); *Avery v. Ferguson*, No. 08-5091, 2010 WL 3829433, at *12 (W.D. Ark. Sept. 3, 2010) (failure to accommodate a prisoner's religious-based vegetarian diet did not implicate the Eighth Amendment).  Thus, this aspect of Gordon's Eighth Amendment claim fails as a matter of law.

### c.    Other Conditions of Confinement

Finally, Gordon sets forth a litany of complaints regarding his confinement at RGC, which he contends "in their individuality and totality" violate the Eighth Amendment. (ECF No. 1, PageID.15).  Each of these allegations is addressed below.

First, Gordon claims that RGC "does not allow inmates to order shower shoes, nor do they provide them."  (*Id.*).  Gordon alleges that, as a result, he "was forced to either not shower at all or shower barefooted in a community shower shared by over 220 inmates, where those inmates blow snot, urinate, and ejaculate."  (*Id.*).  However, Gordon does not allege that he suffered any kind of harm as a result of this situation.[10]  Moreover, courts

---

[10] In his complaint, and later in his response brief, Gordon claims that some of these inmates "are

have held that similar claims of minor inconveniences – such as the deprivation of shower shoes – are insufficient to state a claim for violation of the Eighth Amendment.  *See, e.g., Reitmeyer v. Monroe*, No. 19-cv-25, 2019 WL 549058, at *3 (W.D. Mich. Feb. 12, 2019) (concluding that inmate failed to state an Eighth Amendment claim premised on a lack of shower shoes and possible exposure to foot fungus and black mold); *Orum v. Bogue*, No. 22-cv-157, 2022 WL 4376601, at *4-5 (W.D. Mich. Sept. 22, 2022) (no Eighth Amendment claim where plaintiff was forced to stay in a dirty segregation shower without shoes for several hours); *Stewart v. Horton*, No. 22-cv-127, 2022 WL 3273586, at *6 (W.D. Mich. Aug. 11, 2022) ("Plaintiff fails to allege any facts to suggest that the deprivations complained of – the lack of shower shoes, additional underwear, socks, and more than a jumpsuit for two weeks – were anything other than temporary inconveniences, and allegations about temporary inconveniences do not show that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.").

Next, Gordon alleges he "was forced to go (3) weeks without soap, toothpaste & deodorant"; that "[l]aundry is only washed once per week"; and that he was forced to get by with "[o]nly (1) roll of tissue per week[.]"  (ECF No. 1, PageID.15-17).  Again, however, while unpleasant, such minor inconveniences fail to rise to the level of constitutional violations.  *See Jackson v. Powell*, No. 18-cv-466, 2018 WL 3722158, at *8

---

possibly HIV positive" or could have had hepatitis and that he "could have contracted" one of these diseases (or others).  (ECF No. 1, PageID.15; ECF No. 33, PageID.316).  But he has not alleged that he actually became sick or suffered any other harm.

(W.D. Mich. Aug. 6, 2018) ("Plaintiff's alleged temporary deprivations of hygiene items, exercise yard, and laundry service amount to minor inconveniences that do not rise to the level of an Eighth Amendment violation."); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (being completely denied toilet paper for six days "is not actionable conduct" under the Eighth Amendment).

Gordon also complains that "windows were busted out creating freezing temperatures" and that these conditions persisted for the "entire time" he was at RGC, from early October 2020 until early January 2021.  (ECF No. 1, PageID.16).  He submitted a grievance about this issue, complaining that "dozens of windows" were "busted out[,]" which created an "enormous draft of cold air coming thru [sic] the windows."  (*Id.*, PageID.60).  Although the date of the grievance is not visible on the copy attached to Gordon's complaint, a Step I response was provided on December 4, 2020.  (*Id.*, PageID.61).  It indicates:

> Maintenance was contacted and stated that they were able to get the windows to close.  Also they are working on getting the broken windows fixed as there is [sic] a lot of broken windows throughout the blocks from prisoners throwing objects at them.

(*Id.*).  Thus, Gordon reported a concern, and the evidence he submitted with his complaint demonstrates that appropriate actions were taken to remedy the issue.[11]  Under such circumstances, and, most significantly, where Gordon has not alleged that he suffered any

---

[11] In his response brief, Gordon claims that although a work order was placed, "the window was never fixed."  (ECF No. 33, PageID.317).  Gordon was transferred out of RGC on January 7, 2021, however – just over one month after the grievance response indicated the work order was placed.  The fact that the windows had not been fixed within this timeframe is not necessarily unreasonable and does not establish deliberate indifference to a substantial risk of serious harm.

harm as a result of these conditions, he has not sufficiently stated a claim for an Eighth Amendment violation. *See Farmer*, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").[12]

Next, Gordon complains that the hot water in his cell did not work for one week. (ECF No. 1, PageID.17). But, courts have routinely held that a prisoner does not have a constitutional right to hot water. *See Salami v. Winn*, No. 19-11568, 2019 WL 10888192, at *3 (E.D. Mich. May 31, 2019) ("The lack of hot water [over a two-and-a-half-week period], while perhaps unpleasant, was temporary and does not violate contemporary standards of decency….") (collecting cases). Similarly, Gordon's allegation that, for an unspecified period of time, Defendant Gundrum "cut the water off in the unit" because inmates were "throwing things off the gallery" (ECF No. 1, PageID.18) also fails to state a claim for relief because it constitutes only an inconvenience, and Gordon does not allege he had no other source for water. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (plaintiff's allegation that a corrections officer turned off the water to his cell failed to state a claim, as it was merely a temporary inconvenience).

Finally, Gordon complains about the lack of recreation time, claiming "RGC only

---

[12] Along the same lines, Gordon alleged that there was "no ventilation system in the cells" but "simply a hole in the wall" where the ventilation pipes were previously. (ECF No. 1, PageID.18). This allegation is perplexing, given Gordon's somewhat inconsistent complaint that he was confined in a cell with bars (i.e., not an enclosed cell) that allowed in an "enormous draft." (*Id.*, PageID.16, 60). Regardless, Gordon does not allege that he was harmed by the alleged poor ventilation and, thus, this allegation also fails to state an Eighth Amendment claim. *See Jasman v. Schmidt*, 4 F. App'x 233, 236 (6th Cir. 2001).

allows (3) yards **per week**" for a total of "2 hours and 15 minutes out of cell activity **per week**[.]"[13]   (ECF No. 1, PageID.17) (emphasis in original).   Gordon further alleges that this lack of yard time resulted in limited access to phone calls; "RGC does not allow inmates to receive reading materials from the general library"; and "no appliances are allowed, so Plaintiff was basically left with nothing to do but stare at the wall 24hours [sic] a day."   (*Id.*, PageID.17, 18).   As with all of Gordon's other complaints, these are at most minor inconveniences that do not rise to the level of an Eighth Amendment violation.   *See, e.g., Resch v. Washington*, No. 21-cv-293, 2022 WL 1153132, at *9-10 (W.D. Mich. Apr. 19, 2022) (plaintiff's allegations of insufficient out-of-cell exercise time did not rise to the level of an Eighth Amendment violation) (citing cases); *Jackson*, 2018 WL 3722158, at *8 (alleged deprivation of exercise yard time amounts to a minor inconvenience and is not actionable under the Eighth Amendment); *McKinney v. Smith*, No. 18-cv-603, 2018 WL 3197434, at *8 (W.D. Mich. June 29, 2018) ("The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation.").   For all of these reasons, Gordon's Eighth Amendment conditions of confinement claim should be dismissed.[14]

---

[13] In his response brief, Gordon asserts that RGC's limited yard time violated MDOC policy, which provides for at least two hours per day of indoor or outdoor recreation.  (ECF No. 33, PageID.318).  As set forth above, however, the mere violation of a prison policy does not constitute a constitutional violation.  *See Wilcox*, 2021 WL 230113, at *5.

[14] Because Gordon's federal claims should be dismissed, the Court should also decline to exercise supplemental jurisdiction over Gordon's state law negligence claim.  *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("a federal court that has dismissed a plaintiff's federal-law claims should ordinarily not reach the plaintiff's state-law claims").

III.    **CONCLUSION**

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 31)** be **GRANTED IN PART** as to Gordon's Eighth Amendment claims and **DENIED IN PART** as to Gordon's First Amendment free exercise claim. Gordon should be permitted to proceed with his First Amendment claim against Defendants Cargor, Jarret, Malloy, Howard, Pearl, and John/Jane Doe Transfer Coordinator.  **IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Gordon's state law negligence claim.

Dated: September 18, 2023                    s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir.1981).  The filing of objections that raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 18, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager